IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSEPH W. OWENS                                                                    PLAINTIFF
ADC #158571

V.                          NO. 4:21-cv-00220-BSM-ERE

DEXTER PAYNE, *et al.*                                                          DEFENDANTS

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections:

This Recommendation for the dismissal of Mr. Owens' claims has been sent to United States District Judge Brian S. Miller. Any party may file written objections to all or part of this Recommendation. Filed objections must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of the Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

### II.   Introduction:

Joseph W. Owens, an Arkansas Division of Correction ("ADC") inmate, filed this *pro se* civil rights lawsuit under 42 U.S.C. § 1983. *Docs. 1, 4.* He paid the statutory filing fee in full. *Doc. 8.*

Mr. Owens claims that on January 3, 2021, Defendants Ceante McJoy, Yosha Means, and Justin Whipps used excessive force against him (1) in violation of the Eighth Amendment and (2) in retaliation for his use of the prison grievance process.[1] *Id*.

Pending before the Court is Defendants' motion for summary judgment, brief in support, and a statement of undisputed facts. *Docs. 58, 59, 60*. They argue that they are entitled to qualified immunity.[2] Mr. Owens has not responded, and the time for doing so has passed.[3] For the reasons stated below, Defendants' motion for summary judgment should be granted.

## III.  Summary Judgment Standard:

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as

---

[1] These are the only claims remaining. On June 1, 2021, the Court dismissed Mr. Owens' claims regarding: (1) the conditions of his confinement; (2) alleged exposure to COVID-19; (3) alleged exposure to verbal abuse; (4) the denial of his transfer to the Texarkana work-release program; and (5) alleged false disciplinary charges. *Doc. 15*. The Court also dismissed Mr. Owens' claims against Defendant Aundrea Culclager. *Id.* On October 7, 2021, the Court dismissed the following claims: (1) official-capacity claims for money damages; (2) failure-to-supervise claim against Defendant Payne; (3) all claims against Defendant Mixon; and (4) all claims for deliberate-indifference to medical needs. *Doc. 31*.

[2] Defendants also argue that Mr. Owens' official-capacity claims for money damages are barred by sovereign immunity. As mentioned above, the Court previously dismissed Mr. Owens' official capacity claims seeking money damages. *Doc. 31*.

[3] Mr. Owens' response was due on September 5, 2022. *Doc. 62*. Because Mr. Owens failed to file a statement of disputed facts, the facts contained in Defendants' statement of undisputed facts are deemed admitted. *See* Local Rule 56.1(c). See *Doc. 65*.

to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See Fed. R. Civ. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### IV.   Background:

####   A.   Defendants' Version of Events

In support of Defendants' statement of undisputed material facts (*Doc. 60*), summarized below, they present Mr. Owens' June 16, 2022 deposition testimony (*Doc. 58-1*); a sworn declaration by each Defendant (*Docs. 58-3, 58-6, 58-8*);[4] a

---

[4] Defendants' declarations incorporate written incident statements that they submitted on January 3, 2021, each reporting that Mr. Owens was taken to the floor after he ignored multiple orders to submit to hand restrains and physically resisted officers' efforts to restrain him. *Docs. 58-5, 58-7, 58-9.*

3

video recording of the underlying incident (*Doc. 58-2*); and notes from Mr. Owens' January 3, 2021 medical encounter. *Doc. 58-11*.

On January 1, 2021, Mr. Owens had words with ADC Captain Quintin Mixon. *Doc. 4. at 10, 58-1-at 4-5*. On January 3, 2021, Mr. Owens submitted a grievance to ADC Lieutenant Crofford, complaining that Captain Mixon had subjected him to verbal abuse. *Id*. After Mr. Owens submitted the grievance, he worried that he had failed to sign and date it, and he attempted to find Lieutenant Crofford to correct his mistake. *Doc. 4 at 11*.

Mr. Owens looked for Lieutenant Crofford at the chow hall gate, where Defendants Means and Whipps were present. *Doc. 58-1 at 5-6*. Defendant Means told Mr. Owens she had not seen Lieutenant Crofford, and Defendant Whipps gave Mr. Owens two direct orders to return to his cell, which he ignored. *Id*. Captain Mixon, also at the scene, ordered Mr. Owens to his barracks. *Id*. Mr. Owens began walking in the direction of his barracks, but instead of returning to his barracks as ordered, he went to the Assistant Warden's office and knocked on the door. *Id. at 6*. When no one responded, Mr. Owens proceeded back to the chow hall gate, looking for Lieutenant Crofford. *Id*. At that time, Captain Mixon instructed Defendants Whipps and McJoy to place Mr. Owens in hand restraints. *Doc. 58-5 at 2; Doc. 58-7 at 2*.

Video footage from a surveillance camera (*Doc. 58-2*) shows the following sequence of events. At 8:49:40 a.m., Mr. Owens points through the chow hall gate. In his deposition, Mr. Owens explained that he was yelling into the chow hall for Lieutenant Crofford. *Doc. 58-1 at 6*. At 8:49:42 a.m., Defendants Whipps and McJoy approach Mr. Owens from behind and issue several direct orders to submit to hand restraints, but Mr. Owens does not comply.

At 8:49:46 a.m., while Mr. Owens stands at the chow hall gate, Defendants Whipps and McJoy begin placing hand restraints on him. From 8:49:50 through 8:49:52 a.m., Defendant Whipps takes Mr. Owens to the ground and Mr. Owens lands on his back and attempts to sit up and stand, all while resisting the hand restraints. At 8:49:53 a.m., Defendant McJoy attempts to push Mr. Owens back to the floor so that he can be restrained, despite his continued resistance.

At 8:49:58 a.m., Defendant McJoy sits Mr. Owens up and moves to his left side. At 8:49:59 a.m., Defendant Whipps, standing on the right side of Mr. Owens, attempts to place Mr. Owens' right arm behind his back to apply the hand restraints, but Mr. Owens continues to resist. At 8:50:01 a.m., in an effort to regain control and restrain Mr. Owens' hands, Defendants Whipps and McJoy take him to the ground again. From 8:50:02 until 8:50:26 a.m., Defendants Whipps and McJoy continue attempts to restrain Mr. Owens.

At 8:50:27 a.m., Defendants Whipps and McJoy again attempt to sit Mr. Owens up in order to restrain his hands, but for approximately the next 26 seconds, Mr. Owens continues to resist. Mr. Owens straightened his arm to prevent Defendants Whipps from placing it behind his back.

At 8:50:53 a.m., Defendants Whipps and McJoy take Mr. Owens to the ground a third time. At 8:51:05 a.m., Mr. Owens continues to struggle and rolls over in an attempt to break Defendant McJoy's grasp. At 8:51:31 a.m., Defendant Means tries to place leg restraints on Mr. Owens.

At 8:51:35 a.m., Defendant Whipps stands over Mr. Owens, attempting to place him in hand restraints, but Mr. Owens continues to fight.

After two minutes of Mr. Owens struggling and refusing to comply with direct orders, Defendant Whipps strikes Mr. Owens with a closed fist on the back of the arm to prevent his continued resistance, and Captain Mixon eventually places Mr. Owens in hand restraints.

ADC officers then escorted Mr. Owens to restricted housing where he was evaluated by medical staff, and he denied suffering any injuries during the underlying incident. *Doc. 58-11 at 1*. Medical staff noted that Mr. Owens had no visible injuries, such a wounds, bruises, or abrasions. *Id*.

As a result of this incident, Defendant Whipps charged Mr. Owens with: (1) resisting apprehension; (2) failure to obey order of staff; (3) refusing a direct verbal

order; and (4) assault-verbal or written threat. *Doc. 58-3 at 1-2; Doc. 58-10 at 1*. Mr. Owens pleaded guilty to failure to obey order of staff and refusing a direct verbal order. *Doc. 58-1 at 6; Doc. 58-10 at 2*. ADC officers found him guilty of resisting apprehension and not guilty of assault. *Id*.

### B. Mr. Owens' Version of Events

In his deposition,[5] Mr. Owens recalled events that have little in common with those shown on the video footage. He denied that he was directed to submit to handcuffs and stated that Defendant Whipps "popped up out of nowhere" and put a handcuff on him. *Doc. 58-1 at 6, 14*. Mr. Owens recalled: "A handcuff goes on my left-hand, and I'm snatched down to my knees. As I'm snatched down to my knees, an arm wrapped around my neck and I'm punched in the face." *Id*. at 6. Mr. Owens testified that Defendant Whipps punched him in the face; Defendant McJoy choked him; Defendants Whipps and McJoy took him to the ground, causing him to hit his head; and Defendant Means fastened his leg restraints too tightly. *Doc. 58-1 at 7-8*. According to Mr. Owens he sustained: (1) a knot above his right eye; (2) a busted lip; (3) inflammation around his neck; and (4) a sore back. *Id. at 7-9*. However, Mr.

---

[5] The Court notified Mr. Owens that in responding to Defendants' motion for summary judgment, he could not rest on mere allegations and had to "meet proof with proof." *Doc. 62 at 1*. The Court explained that his response should include affidavits, jail records, or other evidence demonstrating a genuine issue of material fact for trial and that any affidavit submitted must be either sworn and signed before a notary or executed under the penalty of perjury. *Id. at 2*. Mr. Owens did not respond to Defendants' motion, and his deposition testimony supplies the sole evidence recounting his version of events.

Owens' conceded that after Sgt. Whipps struck him, he "resist[ed]" and "ducked and dodged." *Doc. 58-1 at 12-13*.

## V. Discussion:

### A. Qualified Immunity

Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the assertion of qualified immunity at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).[6]

In deciding the question of qualified immunity, the Court cannot treat Defendants as "one unified group" and must consider each Defendant's conduct to determine whether evidence against that "*individual officer* [is] sufficient to

---

[6] Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 129 (2009).

overcome qualified immunity." *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) (quoting *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013)).

In this case, Mr. Hill has failed to come forward with evidence that any Defendant's conduct violated his constitutional rights, and each Defendant is therefore entitled to qualified immunity.

### 1. Excessive Force

To prevail on his Eighth Amendment excessive-force claim, Mr. Owens must demonstrate that Defendants used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). To act "maliciously" means "taking a course of action, without just cause or reason, that was intended to injure the inmate." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted). An officer who acts "sadistically" engages in "extreme or excessive cruelty" or "delight[s] in cruelty." *Id*. "The word 'sadistically' is not surplusage; 'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (citation omitted).

In evaluating whether the force employed was a good-faith effort to restore order, factors to consider include: (1) the objective need for the force; (2) the

relationship between the need and the amount of force used; (3) the threat reasonably perceived by Defendants; (4) any efforts made by Defendants to temper the severity of their forceful response; and (5) the extent of Mr. Owens' injuries. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2008).

In his deposition, Mr. Owens testified that Defendant McJoy choked him; Defendants Whipps and McJoy took him to the ground, causing him to hit his head; and Defendant Means fastened his leg restraints too tightly. *Doc. 58-1 at 7-8*. However, Defendants' video evidence supports their version of the facts and discredits Mr. Owens' testimony that Defendant Whipps struck him in the face or that Defendant McJoy choked him. There is no evidence of this in the video. The video footage neither supports nor discredits Mr. Owens' testimony that Defendants Whipps and McJoy caused him to he hit his head or that Defendant Means fastened his leg restraints too tightly. However, even assuming these facts, they fail to show that any Defendant employed force maliciously or sadistically to harm Mr. Owens.

Based on the video, no reasonable juror could find that Defendant Whipps, McJoy, or Means used force in excess of that needed control Mr. Owens, who refused to comply with multiple direct orders. "[T]his is not a case where 'a complete absence of a penological purpose' raised 'the reasonable inference that the officers acted maliciously in an effort to cause harm.'" *Burns v. Eaton*, 752 F.3d 1136, 1140

(8th Cir. 2014) (citing *Williams v. Jackson*, 600 F.3d 1007, 1014 (8th Cir. 2010); see also *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) ("guards are liable only if they are completely unjustified in using force")). Here, "there [is no] specific evidence of a malicious motive to harm, or evidence that the force used was so greatly in excess of that needed to restore and maintain order as to raise a reasonable inference of malicious motive." *Id*.

Moreover, the fact that Mr. Owens pleaded guilty to failure to obey order of staff and refusing a direct verbal order and was found guilty of resisting apprehension further discredits Mr. Owens' claims.

As to Mr. Owens' alleged injuries – a knot above his right eye, a busted lip, inflammation around his neck, and a sore back – his medical records contradict his own testimony. As previously noted, immediately following the incident, Mr. Owens denied suffering any injuries and medical staff noted that Mr. Owens had no visible injuries, such a wounds, bruises, or abrasions. Mr. Owens has come forward with no evidence supporting his claim to the contrary.

Thus, Mr. Owens' allegations are so "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As a result, the Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. Defendants are entitled to qualified immunity on Mr. Owens' excessive force claims.

### 2.     Retaliation

To succeed on his retaliation claim, Mr. Owens must prove that: (1) he engaged in constitutionally protected activity; (2) Defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was a motivating factor for the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (internal citation omitted) (inmate "must show that impermissible retaliation was the actual motivating factor for his transfer"). Moreover, allegations of retaliation must be more than speculative and conclusory. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996).

Mr. Owens speculates that on January 3, 2021, Defendants used excessive force against him because two days earlier, he submitted a grievance that did not mention them but complained that Captain Mixon had subjected him to verbal abuse. Mr. Owens presents no evidence that retaliation was a "motivating factor" for Defendants' conduct on January 3, 2021. In fact, he admitted in his deposition that he was speculating about why Defendants used force against him on January 3. *Doc. 58-1 at 11, 13*. Furthermore, video footage of the incident shows that Defendants used force in reaction to Mr. Owens' defiant behavior. Mr. Owens fails to provide any evidence, other than his own speculation, that Defendants' use of force was motivated, at least in part, by his grievance against Captain Mixon. See *Goff v.*

*Burton*, 7 F.3d 734, 738-39 (8th Cir. 1993) (stating that, to succeed on a retaliatory-discipline claim, an inmate must prove that, but for an unconstitutional retaliatory motive, the discipline would not have occurred); *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (inmate failed to prove retaliation claim when "he failed to show that but for his assertions of his constitutional rights, he would not have been transferred"). Defendants are entitled to qualified immunity on Mr. Owens' retaliation claims.

**VI.** **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 58*) be GRANTED.

2. Mr. Owens' excessive force and retaliation claims be DISMISSED, with prejudice.

3. The Clerk be instructed to close this case.

Dated this 26th day of October, 2022.

_____
UNITED STATES MAGISTRATE JUDGE